UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

MELISSA COMPERE,

     Plaintiff,

v.

NUSRET MIAMI, LLC,[1]

     Defendant.

_____/

## DEFENDANT'S NOTICE OF REMOVAL

Defendant NUSRET MIAMI, LLC ("Defendant" or "Nusret"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 respectfully files this Notice of Removal giving notice that it is removing this civil action to the United States District Court for the Southern District of Florida, Miami Division. In support of this Notice of Removal, Defendant states as follows:

### I.    PROCEDURAL HISTORY

1.    On or about December 13, 2019, Plaintiff filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida entitled *Melissa Compere v. Nusret Miami LLC,* 2019-036395-CA-01. ("State Court Action"). **Ex. A**. Plaintiff, who was previously employed by Nusret, alleges she was discriminated against based on her sex and retaliated against in violation of the Florida Civil Rights Act, §760.01, *et seq.* ("FCRA").

2.    Nusret was not served with formal notice of process of the Summons and Complaint, and instead filed a Notice of Waiver of Service of Process in the State Court Action

---

[1] The Complaint incorrectly refers to Nusret as a Florida corporation. However, Nusret is a Florida limited liability company, whose sole member is a limited liability company organized under the laws of Delaware.

on January 13, 2020. *See* **Exhibit B.**  Accordingly, this Notice of Removal is timely as it is being filed within thirty-days (30) from the date Nusret's was deemed effectively served under 28 U.S.C. § 1446(b). *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999); *Brown v. United States HHS*, No. 5:10-CV-94-D, 2010 U.S. Dist. LEXIS 74654, at *3-4 (E.D.N.C. July 22, 2010) ("Essentially, the thirty-day removal period is triggered by formal service of process or waiver of service of process.") (citing *Murphy Brothers*).

3.      A true and legible copy of all pleadings and other papers or exhibits of every kind on file in the State Court Action are attached as **Exhibit C.**

4.      This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 because it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Pursuant to 28 U.S.C. § 1446(a), the District and Division where this action is pending is the U.S. District Court for the Southern District of Florida, Miami Division, and Nusret properly seeks to remove this action to this Court.

## II.   DIVERSITY OF CITIZENSHIP

6.      To qualify for diversity jurisdiction, there must be complete diversity between the parties, which means that no plaintiff may be a citizen of the same state as any defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000)).

7.      Upon information and belief, Plaintiff is a citizen of the State of Florida. Indeed, in her Complaint, Plaintiff alleges that she is a resident of Florida. *See* Compl. ¶7. Thus, Plaintiff is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

8.    For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members, not where the limited liability company was formed. *See Rolling Greens MHP, LP v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen"); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("[W]e conclude that the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members").

9.    Nusret Miami LLC's sole member and manager is Nusret Holdings USA, LLC ("Nusret Holdings"), a Delaware limited liability company with New York and Delaware citizenship. Accordingly, for the purposes of 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists between Plaintiff and Nusret a citizen of New York and Delaware for diversity purposes.

## III.    AMOUNT IN CONTROVERSY

10.    Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction also requires the amount in controversy to "exceed the sum or value of $75,000.00."

11.    Plaintiff's Complaint alleges damages exceeding $15,000.00, exclusive of interest, costs and attorneys' fees. *See* Compl. ¶5). Where the initial pleading does not demand a specific sum, the notice of removal may assert the amount in controversy. 28 U.S.C.§ 1446(c)(2)(A). A removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and need not submit evidence in support thereof. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

12.    In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," and *not* how much plaintiff is ultimately likely to recover. *See S. Fla. Wellness, Inc. v. Allstate Ins.*

*Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citation omitted) (explaining "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover"). In conducting its analysis, the Court may rely upon its "judicial experience and common sense," rather than a plaintiff's self-serving representations that the value of his claims is indeterminate. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

13.     A plain reading of Plaintiff's Complaint – together with the jurisdictional allegations herein – demonstrates the amount in controversy exceeds the sum of $75,000.00, and thus, meets the jurisdictional amount required for removal. *See* 28 U.S.C. § 1332(a).

14.     Plaintiff alleges that she worked as a runner, cocktail waitress, and server for Defendant at the Nusr-Et Steakhouse. (Compl. ¶18). Plaintiff claims she initially applied for, and was rejected for a server position, in favor of less qualified males. (Compl. at pp. 1-2). She further alleges that she was "promoted" to a server position approximately five months later but was allegedly forced to work "inferior shifts or job positions based upon [her] sex." *Id*. at p.2.

15.     Plaintiff alleges that she was terminated from her employment at Nusret in November of 2018 after a guest complained of broken glass at a dining table. *Id*.  She further alleges that "although at least seven employees and management responded to the incident" only she and another female were terminated. Compl. at p. 2. According to the Complaint, "the sex of Plaintiff was a substantial motivating factor in the treatment of Plaintiff by Defendant" (Compl. ¶19), including her termination from Nusret as alleged in her charge of discrimination.

16.     Based on those alleged facts, Plaintiff is seeking "damages," including but not limited to, loss wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, humiliation, mental anguish, loss of enjoyment of life, and other pecuniary losses." (Compl. ¶¶ 33-34). Plaintiff also seeks punitive and liquidated damages, prejudgment interest, and the recovery of attorneys' fees and costs. *Id*. at ¶34

17.     As to lost wages, back pay should be calculated from the time of the adverse employment action through the date of trial. *E.g., Pope v. 20/20 Commc'ns, Inc*., No. 8:15-cv-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial); *Hendry v. Tampa Ship, LLC*, No. 8:10-cv-1849-T-30-30TGW, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Morgan v. Sears, Roebuck & Co*., No. 12-60055-CIV, 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (calculating back pay from time of termination through expected trial date, noting that court may use its "judicial experience and common sense" in making that determination).[2]

18.     Plaintiff during the last six months of Plaintiff's employment, Plaintiff earned an average of approximately $1,300 per week. As of the date of this removal, it has been approximately 64 weeks since Plaintiff's employment ended. Accordingly, a conservative estimation of Plaintiff's back pay to date is approximately $85,203 not including the value of the wages Plaintiff claims she was entitled to as a result of allegedly working inferior shifts and job positions. Adding an additional year of back pay to account for the expected time between now

---

[2] *See also, Penalver v. N. Elec., Inc*., No. 12-80188-CIV, 2012 WL 1317621, at *3 (S.D. Fla. Apr. 17, 2012) (calculating back pay through the "first possible trial date" approximately ten months after removal); *Messina v. Chanel, Inc*., No. 10-24518-CIV, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future).

and trial, Plaintiff could potentially recover approximately $152,803 in total back pay.[3]

19.     Front pay further augments the amount of lost wages in this action. *See Brown v. Cunningham Lindsey U.S., Inc*., No. 305CV141J32HTS, 2005 WL 1126670, at *4 (M.D. Fla. May 11, 2005) (crediting back pay from the time of plaintiff's termination through the estimated time of trial and crediting one year of front pay as a conservative measure of potential future lost wages); *Wineberger*, 672 F. App'x 914 (11th Cir. 2016) (approving inclusion of one year of front pay in amount in controversy calculation under FCRA); *see also Munoz v. Oceanside Resorts, Inc*., 223 F.3d 1340, 1349 (11th Cir. 2000) (affirming district court's award including one year's worth of front pay in discrimination case). One year of front pay would increase Plaintiff's claimed damages for lost wages by another $67,600.

20.     Additionally, district courts routinely include compensatory damages in the form of pain and suffering, such as Plaintiff claims in this case, in the jurisdictional amount as well. *See e.g., Estevez-Gonzalez v. Kraft, Inc*., 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Bartley v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. Sept. 24, 2007) (finding that complaint "clearly established" amount in controversy based on general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.).[4]

---

[3] Back wages to date $85,203 + $67,600 ($1,300 x 52 -one year until estimated time of trial) = $152,803.

[4] *See also*, *Wineberger*, *supra*, (compensatory damages in the range of $5,000-$30,000 were included for purposes of calculating the amount in controversy for a claim brought under the FCRA, when the complaint merely alleged emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons").

21.     The Eleventh Circuit has held that objective medical testimony is not necessary to support an award of emotional distress damages under FCRA, and plaintiff's lay testimony concerning the emotional impact of illegal termination was itself sufficient to support such award. *See Munoz*, 223 F.3d at 1348 (affirming jury award of $150,000 for emotional distress caused by illegal termination under FCRA); *see also, Bernstein v. Sephora, Div. of DFS Grp. L.P.*, 182 F. Supp. 2d 1214, 1228 (S.D. Fla. 2002) (finding compensatory damages of $75,000.00 was maximum recoverable in discrimination case when evidence consisted mainly of plaintiff's "own rather conclusory testimony about her general distress"). Based on the case law above, $25,000.00 for Plaintiff's claimed emotional distress is a conservative estimate to include in the amount in controversy calculation.

22.     Adding Plaintiff's claim for attorneys' fees, which are recoverable under the FCRA, to the amount in controversy calculation, there is no question the amount in controversy exceeds $75,000.00. *See e.g., Penalver v. N. Elec., Inc.,* No. 12-80188-CIV, 2012 WL 1317621, at *3 (S.D. Fla. Apr. 17, 2012*) (including reasonable attorney's fees in amount of controversy calculation). Given Plaintiff's counsel has presumably undertaken an initial investigation of Plaintiff's claim and thereafter filed a Complaint, a reasonable estimate of attorneys' fees to date would be $5,000.00. Attorneys' fees through trial, coupled with the unmitigated back pay damages, would certainly exceed the amount in controversy alone.

## IV.    CONCLUSION

23.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and it is one that may be removed under 28 U.S.C. § 1441 and 1446. A copy of this Notice of Removal is being filed with the Circuit Court of the Eleventh Judicial Circuit in and for Miami Dade County, Florida.

**WHEREFORE**, Defendant respectfully removes this action, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court in the Southern District Court of Florida, Miami Division.

**Dated**: February 12, 2020.

Respectfully Submitted,

*s/Miguel A. Morel*
Jonathan A. Beckerman (FBN: 568252)
Jonathan.Beckerman@lewisbrisbois.com
Miguel A. Morel (FBN: 89163)
Miguel.Morel @lewisbrisbois.com
**Lewis Brisbois Bisgaard & Smith LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, Florida 33301
Tel: 954.728.1280

*Attorneys for Defendant*